The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; or amend the Opinion and Award, except with the modification of Conclusion of Law Number 2 and Award Numbers 3 and 4 and minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement filed on October 14, 1998, incorporated herein by reference, at the hearing, and in their Joint Stipulation filed on February 16, 1999 as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Zenith Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable back injury on October 8, 1996. Defendants initially filed a Form 63 on October 31, 1996. Thereafter, a Form 60 was filed on August 6, 1997.
5. Plaintiffs average weekly wage was $300.00, which yields a compensation rate of $200.01 per week.
6. The issues for determination are:
 a. Whether plaintiff is entitled to change his treating physician,
 b. Whether the Order of January 23, 1998 should be upheld, and
 b. Whether plaintiff is entitled to additional medical treatment.
7. The parties stipulated one hundred and fifty-five pages of medical records into evidence. By Joint Stipulation filed on February 16, 1999, the parties submitted three pages of records from Dr. Seyed Emadian and two pages from Dr. Mark Moody.
8. The following Industrial Commission forms, motion, order, and appeal from that order were admitted into evidence by Deputy Commissioner Dollar:
a. Forms 33, 33R, 63, 19, 28T, and 60,
 b. Plaintiffs Motion of December 23, 1997 to change his treating physician to Dr. Mironer,
 c. Order of January 23, 1998 by the Commission, denying plaintiffs Motion, and
d. Plaintiffs appeal of the January 23, 1998 Order.
9. Following the hearing before Deputy Commissioner Dollar, the depositions of Terence E. Fitzgerald, Ph.D., Larry Kroll, M.D., Y. Eugene Mironer, M.D., Gerald Rollins, M.D., and Andrew Rudins, M.D., were received into evidence.
 * * * * * * * * * * *
The Full Commission adopts with minor modifications the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the admittedly compensable back injury on October 8, 1996, plaintiff was a twenty-seven year old married male, who was employed as a heating and air conditioning technician. Plaintiff had a history of marijuana and cocaine use.
2. Plaintiff has work experience in heating and air conditioning service and repair, electrical work, and automotive repair.
3. Following the compensable back injury that occurred on October 8, 1996, Dr. David C. Trott of Parkside Hospital Occupational Health initially treated plaintiff. After plaintiffs pain failed to resolve within two weeks, Dr. Trott referred plaintiff to orthopedist Dr. Larry Kroll.
4. On October 28, 1996, Dr. Kroll examined plaintiff and ordered an MRI, which revealed a midline lumbar disc protrusion at L5-S1. After a failed course of conservative treatment, Dr. Kroll performed a lumbar laminectomy on April 10, 1997.
5. On August 6, 1997, plaintiff was evaluated at Southeastern Spine and Sports Medicine Center in Asheville. This facility is a multidisciplinary facility for spine surgery patients. In initial psychometric testing, plaintiff showed a remarkable degree of symptom focus, significant job dissatisfaction, somatization, and obsessive-compulsiveness. Plaintiff denied substance abuse problems. However, the testing indicated plaintiff had a high potential for substance abuse. After a physical examination by physiatrist Dr. Andrew Rudins, he recommended plaintiff discontinue use of narcotic pain mediation. Plaintiff participated in work hardening at the Center. After the program, a functional capacity evaluation found plaintiff capable of performing medium capacity work. During the course of the therapy and rehabilitation program, plaintiffs pain level decreased, his fear of reinjury decreased, and his distress level decreased. Plaintiffs sleep patterns also improved and he began sleeping six hours per night instead of four. Finally, plaintiff was removed from narcotic pain medications.
6. Upon referral by plaintiffs counsel, plaintiff saw Dr. Eugene Mironer in Greenville, South Carolina. Dr. Mironer, a specialist in pain management, examined plaintiff on October 14, 1997. Dr. Mironer diagnosed plaintiff with post-laminectomy syndrome and ordered a discogram and long-acting narcotic pain medication, such as Oxycontin. In August of 1998, Dr. Mironer performed a nerve block. Dr. Mironer referred plaintiff to Dr. Gerald Rollins, an orthopedic surgeon in Spartanburg, South Carolina. Dr. Mironer opined that plaintiff was misdiagnosed; however, he admitted that he had not reviewed all of plaintiffs medical records. Furthermore, he criticized the treatment of Southeastern Spine and Sports Medicine Center although he admitted he was not familiar with the testing which was performed at the Center.
7. Dr. Mironer is not licensed to practice medicine in North Carolina and is not an orthopedic surgeon. Furthermore, Dr. Mironer did not review all of plaintiffs medical records and he was not familiar with the Southeastern Spine and Sports Medicine Center. Therefore, his opinions regarding plaintiffs diagnosis and treatment including the issues of additional surgery and narcotic use are given little to no weight.
8. Oxycontin is a more addictive narcotic pain medication than Tylox. Given the recommendations of the Southeastern Spine and Sports Medicine Center, plaintiffs history of illegal drug use and his prior narcotic pain medication use, Oxycontin or other narcotic pain medication use would not be beneficial to plaintiff.
9. Treatment by Dr. Mironer was not authorized by the carrier or the Industrial Commission. Despite the Commission Order of January 1998, plaintiff continued to treat with Dr. Mironer.
10. On October 29, 1997, plaintiff returned to Dr. Kroll, requesting additional surgery. However, Dr. Kroll did not recommend additional surgery. He found plaintiff had reached the end of the healing period and retained a permanent partial impairment rating of fifteen percent to the back. Dr. Kroll reevaluated plaintiff on June 10, 1998 and found no change in plaintiffs condition.
11. In July of 1998, Gina Williams, a vocational specialist with Page Rehabilitation Services, interviewed plaintiff. Ms. Williams began job placement services for plaintiff the following month. Plaintiff was capable of light to medium capacity work, lifting fifty pounds occasionally, twenty pounds frequently, and ten pounds constantly. Based on these restrictions, Ms. Williams made contacts with potential employers.
12. On September 9, 1998, Dr. Rollins evaluated plaintiff to determine whether he would benefit from further treatment. A prior MRI showed a midline disc protrusion. On examination, plaintiff had hip and buttock pain with straight leg raising, but he did not exhibit symptoms of radicular pain. Dr. Rollins determined that plaintiff had degenerative disc disease which caused the back pain. Further, Dr. Rollins noted that plaintiff requested surgery. Based upon plaintiffs request, an interbody fusion was discussed.
13. On and before March 16, 1999, plaintiff failed to submit applications for work suitable to his restrictions identified by his vocational counselor. By Order filed March 29, 1999, plaintiff was directed to cooperate with vocational rehabilitation efforts. Despite this Order, plaintiff failed to comply.
14. By letter dated April 20, 1999, counsel for plaintiff advised that plaintiff refused the assistance of Gina Williams of Page Rehabilitation Services, Inc. Thereafter, in a report dated April 21, 1999, Ms. Williams noted that plaintiff was requested to submit applications to Fletcher Chevrolet and Medical Action Industries for work which was suitable to his capacity.
15. Dr. Seyed Emadian of Mountain Neurology Center examined plaintiff and noted positive Waddells signs. Based upon his examination and findings, including the fact that plaintiff has only a bulging disc, Dr. Emadian did not recommend surgery. In addition, Dr. Mark Moody, an orthopedic surgeon with Southeastern Spine and Sports Medicine Center, did not recommend additional surgery but instead recommended chronic pain management. The recommendations of Dr. Emadian and Dr. Moody are given greater weight that those of Dr. Mironer.
16. Plaintiff would benefit from chronic pain management therapy. However, he would not benefit from narcotic pain medication or additional surgery for his disc protrusion.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $200.01 per week until March 29, 1999 at which time defendants are entitled to suspend plaintiffs benefits due to his failure to cooperate with vocational rehabilitation efforts in violation of the Commission Order of March 29, 1999. Plaintiff is entitled to reinstatement of his temporary total disability compensation subject to an attorneys fee once he reasonably demonstrates his willingness to cooperate. N.C. Gen. Stat. 97-29 and 97-25.
2. Although plaintiff may in the future be entitled to compensation for permanent partial disability, determination of that issue is premature at this time. Defendants are entitled to a credit for any overpayment of benefits after March 29, 1999. N.C. Gen. Stat. 97-31(23) and 97-42.
3. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendants pay for reasonably necessary medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. However, plaintiff is not entitled to have defendants pay for any treatment by Dr. Mironer or Dr. Rollins as that treatment was unauthorized. N.C. Gen. Stat. 97-2(19), 97-25 and 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiffs Motion to change his treating physician to Dr. Mironer is hereby, and the same shall be, DENIED.
2. Defendants are authorized to suspend payment of temporary total disability benefits to plaintiff effective March 29, 1999 due to his refusal to comply with the Commissions Order directing him to cooperate with vocational rehabilitation. However, defendants shall reinstate plaintiffs temporary total disability compensation once he reasonably demonstrates his willingness to cooperate. If the parties cannot agree on this issue, a motion or request for hearing may be filed.
3. As the issue is premature and hereby reserved, defendants are not ordered to pay compensation for permanent partial disability at this time. Defendants are entitled to a credit for any overpayment of temporary total disability benefits after March 29, 1999.
4. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendants shall pay reasonably necessary medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability when bills for the same have been approved, in accordance with the provisions of the Act. However, defendants are not liable for any treatment by Dr. Mironer or Dr. Rollins, as this treatment was unauthorized.
5. Defendant shall pay the costs, including the expert witness fees, if not already paid, as follows: $275.00 to Terence E. Fitzgerald, Ph.D., $400.00 to Larry Kroll, M.D., $220.00 to Y. Eugene Mironer, M.D., $300.00 to Gerald Rollins, M.D., and $200.00 to Andrew Rudins, M.D.
 * * * * * * * * * * *
This the ___ day of March 2000.
 S/ ____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
DCS:nwg